

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-13-2003

# Reardon v. Hendricks

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3225

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Reardon v. Hendricks" (2003). *2003 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3225

PHILIP H. REARDON,

Appellant

v.

ROY L. HENDRICKS,[*] Administrator;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

(Dist. Court No. 98-cv-04711)
District Court Judge: Hon. Katharine S. Hayden

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2003

Before: ALITO, AMBRO, and CHERTOFF, <u>Circuit Judges</u>.

(Opinion Filed: November 13, 2003)

OPINION OF THE COURT

[*] Substituted pursuant to F.R.A.P. 43(c).

Phillip Reardon appeals a District Court order denying his petition for a writ of habeas corpus. Reardon argues that his state conviction for aggravated manslaughter is unconstitutional because his confession was obtained in violation of his Fifth Amendment rights. We affirm.

I.

In 1991, Reardon underwent treatment for alcoholism at a detoxification center in Red Bank, New Jersey. Doctors considered him a "maintenance drinker," meaning that he would experience serious withdrawal symptoms such as nausea and muscle spasms if he did not consume a high volume of alcohol on a daily basis. On July 15, 1991, Reardon quit his treatment program and stole a pair of surgical gloves from the center. He also stole a bottle of vodka and a roll of duct tape from local merchants.

In the parking lot of the Foodtown grocery market in Red Bank, Reardon followed 79-year-old Kathleen Dalton to her car, a green 1978 Oldsmobile. Wearing the surgical gloves to hide his fingerprints, he pushed Dalton into the passenger seat, ordered her to duck from view, and drove the car away. To quiet his victim, Reardon placed duct tape over Dalton's mouth and nose, and she died from asphyxiation. He disposed of her body in a remote location, stealing her wallet, wristwatch, and diamond ring, partially severing her ring finger in the process.

Reardon pawned Dalton's ring for $375 at an antique shop in Shrewsbury, New

Jersey, and the store's owner, James Heayn, recorded Reardon's driver's license. The next day, Reardon drove Dalton's car to New York, where he obtained a false identification card bearing the name John Dalton, purchased more liquor, and attempted unsuccessfully to use Dalton's credit card to obtain money from a check-cashing outlet. Parking authorities ticketed Dalton's car outside the store. Reardon then attempted to purchase a gold chain from a jewelry shop with Dalton's credit card, but the sales clerk noticed her name on the card and was instructed by the credit-card issuer to cut it up. Reardon returned to New Jersey. Police located Dalton's car outside Captain Kern's Bar in Belmar on July 19.

When Reardon left the bar and began to drive the car away, police stopped him and arrested him. Detective Michael Cerame read Reardon his Miranda rights, and Reardon agreed to make a statement. In the version of events in this first confession, Reardon admitted stealing Dalton's car but denied having any knowledge about her disappearance. He claimed that the car was empty when he found it with the keys in the ignition and Dalton's pocketbook on the front seat. The police were not satisfied with Reardon's account and attempted further interrogation. When Detective Michael Dowling confronted Reardon with the reasons for their suspicion, Reardon asked: "If I tell you the truth, can I have a drink?" Dowling agreed. When Reardon asked how he could be sure that Dowling was telling the truth, Reardon displayed a bottle of gin. Dowling then related the complete circumstances of the crime and Dalton's death. The

police asked numerous followup questions, and Reardon answered them. Later, Reardon led the police to Dalton's body.

Reardon was indicted, and he moved to suppress his confession. After conducting a four-day hearing, the Superior Court denied the motion and found that the state had proven beyond a reasonable doubt that the confession had been voluntary. The Court found that Reardon had been given and had waived his <u>Miranda</u> rights six times. The Court also noted the testimony that, during the time in question, Reardon had been "calm, very cooperative, and not nervous or tense" and that he had not exhibited signs that he was "not able to function without alcohol." The Court observed that "[t]he details, the language that was used, the preciseness with which the . . . statement was given" showed that Reardon knew what he was saying. The Court concluded:

> [T]his Court is satisfied that there is no reasonable doubt
> about the voluntariness of [the] confession. I am satisfied that
> Mr. Reardon confessed to Marjorie Dalton's murder out of an
> overwhelming sense of guilt and a realization that at that time
> it was inevitable, that he was going to be discovered as a
> culprit.

Reardon was convicted of aggravated manslaughter and other offenses and was sentenced to 50 years' imprisonment. The Appellate Division affirmed, and the Supreme Court of New Jersey denied certification. <u>See</u> <u>State v. Reardon</u>, 704 A.2d 19 (N.J. 1997). Without condoning the conduct of the interrogators in offering to accede to Reardon's request for alcohol, the Appellate Division stated:

> [W]hen we review all of the circumstances, we conclude that

there is no objective evidence that defendant's will was overborne. Rather, he gave a coherent, well-organized and sequential statement of his actions. To be sure, the record reveals that defendant's hands were trembling. However, the interrogators and both experts acknowledged that many persons in defendant's situation exhibit far greater signs of anxiety than demonstrated by defendant before and during his second statement. His tears are also consistent with the remorse he experienced when he realized that he had killed Dalton. In short, defendant's conduct does not support his contention that his anxiety of imminent alcohol withdrawal dominated his thoughts and reasoning.

Reardon then filed a petition for a writ of habeas corpus in District Court, arguing, inter alia, that his second confession was involuntary and should have been excluded. The District Court denied the writ but ordered the issuance of a certificate of appealability on that issue. See Reardon v. Hendricks, No. 98-4711 (D. N.J. July 31, 2002). Relying primarily on Stein v. New York, 346 U.S. 156 (1953), a case in which the Supreme Court found a conviction to be voluntary even though police had obtained it by promising to release the suspect's father from jail and not to prosecute his brother, the District Court held that Reardon "understood what he was doing when he gave the statement and further understood that he was not obligated to do so." Reardon, No. 98-4711, slip op. at 18.

II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a writ of habeas corpus shall not issue to a state prisoner unless the state court's adjudication of the relevant claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A decision is "contrary to" a Supreme Court holding if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405–06 (2000). A decision "involve[s] an unreasonable application" of clearly established federal law if the state court "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

## III.

Reardon argues that his second confession was coerced and involuntary and was thus obtained in violation of his Fifth Amendment rights. "The constitutional test for voluntariness involves a determination, on the totality of the circumstances, whether the confession was . . . the product of interrogation which resulted in the overbearing of the defendant's will." Miller v. Fenton, 741 F.2d 1456, 1465–66 (3d Cir. 1984). A court must take into account "both the characteristics of the accused and the details of the interrogation," Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1991). In determining the voluntariness of confessions,

-6-

> [s]ome of the factors taken into account have included the youth of the accused . . . ; his lack of education . . . or his low intelligence . . . ; the lack of any advice to the accused of his constitutional rights . . . ; the length of detention . . . ; the repeated and prolonged nature of the questioning . . . ; and the use of physical punishment such as the deprivation of food or sleep. . . .

Id. (internal citations omitted).

In the present case, it is clear that the state courts applied this standard. Moreover, Reardon has not cited, and our research has not disclosed, any Supreme Court decision holding on materially indistinguishable facts that a confession was involuntary. Accordingly, the adjudication of Reardon's claim in the state courts is not "contrary to" Supreme Court precedent.

The state courts' application of the voluntariness standard to the facts of this particular case was also reasonable. The state courts' analysis was thorough and attentive to the relevant evidence and the factors bearing on voluntariness.

Reardon stresses the effect of his alcohol dependency. But although chemical dependency can obviously serve as a powerful inducement and is an important factor to be considered in determining whether a confession was voluntary, clearly established law forecloses us from assigning controlling weight to Reardon's alcoholism. "The significant fact about all of [the cases applying the 'totality of the circumstances' test] is that none of them turned on the presence or absence of a single controlling criterion." Schneckloth, 412 U.S. at 226.

We have considered all of Reardon's arguments but find no basis for reversal.

IV.

For the reasons explained above, the order of the District Court denying the application for a writ of habeas corpus is affirmed.

---

TO THE CLERK OF THE COURT:

Kindly file the foregoing Not Precedential Opinion.

/s/ Samuel A. Alito, Jr.
Circuit Judge